UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANGELA LITTLEJOHN and SAS STEIN, on behalf of themselves and all similarly situated employees,

        Plaintiffs,

    v.

SUNSHINE RESTAURANT MERGER SUB, LLC and SUNSHINE RESTAURANT PARTNERS, LLC, together d/b/a IHOP,

        Defendant.

Case No. 0:17-cv-60810-BLOOM/Valle

**DEFENDANTS' MOTION TO DISMISS AND COMPEL
INDIVIDUAL ARBITRATION AND MEMORANDUM OF LAW**

Plaintiffs Angela Littlejohn and Sas Stein ("Plaintiffs") were employed by Defendants Sunshine Restaurant Partners LLC and Sunshine Restaurant Merger Sub LLC (together "Defendants" or "SRP") as Assistant Managers at SRP's IHOP restaurants located in Fort Myers, Florida (Littlejohn), West Palm Beach, Florida (Stein), and Pompano Beach, Florida (Stein). Plaintiffs each received a copy of SRP's Dispute Resolution Policy and Procedure and Agreement to Arbitrate ("Arbitration Agreement"), signed and accepted the terms of the Arbitration Agreement, and continued to work at SRP. The Arbitration Agreement requires Plaintiffs to pursue any employment-related claims, including claims under the Fair Labor Standards Act ("FLSA"), through arbitration on an individual basis. Despite this agreement, Plaintiffs filed a lawsuit with this Court alleging an FLSA claim for overtime pay on behalf of themselves and a class of purportedly similarly situated individuals.

In light of the express language in the parties' agreement to arbitrate and pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), Plaintiffs should be required to arbitrate

39349940v.2

their claims on an individual basis before the American Arbitration Association ("AAA"). Accordingly, Defendants respectfully request, pursuant to Federal Rule of Civil Procedure 12(b)(1) and Local Rule 7.1., that this Court dismiss Plaintiffs' First Amended Complaint and compel arbitration on an individual basis, or, in the alternative, stay these proceedings pending the outcome of arbitration.

## Statement of Facts

### A. The Parties' Mandatory And Binding Arbitration Agreement

Plaintiffs are former employees of SRP. (Dkt. 7, Amended Complaint ¶¶ 9, 16-17; Ex. 1, Decl. of Claudia Rodriguez ¶¶ 11-12).[1] In April 2014, SRP introduced the Arbitration Agreement to its current employees, including Littlejohn. (Ex. 1 at ¶ 4). Thereafter, the Arbitration Agreement was provided to and executed by individuals, including Stein, at the outset of employment. (*Id.* at ¶ 5). Under the Arbitration Agreement, SRP and its employees each waived their right to pursue employment related disputes, including claims under the FLSA, in court, agreeing instead to submit such disputes to binding arbitration consistent with the rules and procedures of the AAA. The Arbitration Agreement states in relevant part:

**DISPUTE RESOLUTION POLICY AND PROCEDURE**

**Agreement to Use Procedure**

As an expeditious and economical way to settle employment disputes without the need to go through the courts, Sunshine Restaurant Merger Sub, LLC. (together with its affiliates, subsidiaries or parent corporations or entities, and their successors and assigns) (hereinafter referred to collectively as "the Company" or "SRP") has adopted this Dispute Resolution Policy and Procedure for itself and all of its employees as the exclusive way to resolve employment related disputes. As used in this policy, "You" or "Your" or "Employee" refers to each Employee of SRP.

---

[1] Because motions to compel arbitration generally are treated as motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and as raising factual attacks on the complaint, the Court may "consider evidence outside the four corners of the Complaint." *Jackson v. Home Team Pest Defense, Inc.*, 2013 WL 6051391, at *4 (M.D. Fla. Nov. 15, 2013).

**THIS DISPUTE RESOLUTION POLICY AFFECTS YOUR RIGHTS AS A NEWLY HIRED OR CONTINUING EMPLOYEE OF THE COMPANY. YOU SHOULD READ THIS ENTIRE POLICY CAREFULLY (OR HAVE ANOTHER PERSON READ IT TO YOU IF YOU CANNOT READ IT).**

**Agreement to Arbitrate**

The following agreement is not an employment contract; however it is a contract to arbitrate work-related disputes.

…

This policy applies to any claim or dispute arising out of or relating to Employee's hiring by, employment with or separation from SRP or one of its affiliates, subsidiaries or parent corporations or entities, and their successors and assigns. Except as it otherwise provides, this policy requires all such claims or disputes that have not otherwise been resolved internally within the Company to be resolved only by a neutral arbitrator through final and binding arbitration and not in court by way of a court or jury trial. The agreement also applies, without limitation, to claims and disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and meal periods, termination, harassment, discrimination, retaliation, breach of express or implied contracts, negligence, and applies to claims under the common law, tort claims, claims based on contract, constitutional claims under the state and federal constitutions, and statutory claims under state and federal law including claims arising under the Uniform Trade Secrets Act, Section 1981 of the Civil Rights Act of 1866, the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act, the Health Insurance Portability and Accountability Act, the Uniformed Services Employment and Reemployment Act, the Worker Adjustment and Retraining Notification Act, the Occupational and Safety Health Act of 1970, the Equal Pay Act, the Portal to Portal Act, and state statutes, if any, addressing the same or similar subject matters, and all other state and federal statutory, regulatory, contractual and common law claims relating or applicable to the employment relationship or to the terms or conditions of employment (excluding workers' compensation benefits claims, unemployment insurance claims, state or federal disability insurance claims, and claims under any other valid statute or law that expressly precludes arbitration of such claims).

**THE COMPANY AND YOU UNDERSTAND AND AGREE THAT ARBITRATION OF THE DISPUTES AND CLAIMS COVERED BY THIS POLICY SHALL BE THE SOLE AND EXCLUSIVE METHOD OF RESOLVING ANY AND ALL EXISTING AND FUTURE DISPUTES OR CLAIMS ARISING BY AND BETWEEN THE COMPANY AND YOU.**

(*Id.* at ¶¶ 6-7, Ex. A) (emphasis in original).

The Arbitration Agreement also requires that all claims covered by the Arbitration Agreement be brought on an individual basis and not as class or collective action arbitrations:

> This binding arbitration agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees, or permit such claims or controversies to proceed as a class action, collective action, private attorney general action or any similar representative action. No arbitrator shall have the authority under this agreement to order any such class or representative action. By signing this agreement, I am agreeing to waive any substantive or procedural rights that I may have to bring an action on a class, collective, private attorney general, representative or other similar basis.

(*Id.* at ¶¶ 6, 8, Ex. A). By its express terms, the Arbitration Agreement is "governed by and is entered into pursuant to the Federal Arbitration Act." (*Id.* at ¶ 9).

The Arbitration Agreement expressly states that it "is a condition of employment and binding on [Plaintiffs] and SRP." (*Id.* at ¶ 10). Littlejohn signed and accepted the terms of the Arbitration Agreement on May 5, 2014. (*Id.* at ¶ 11, Ex. B). Stein signed and accepted the terms of the Arbitration Agreement on October 12, 2015. (*Id.* at ¶ 12, Ex. C).

### B. Plaintiffs Understood And Agreed That Their Claims Belong In Individual Arbitration But Nevertheless Filed A Federal Lawsuit

On March 21, 2017, Plaintiffs each submitted a Demand for Arbitration through the AAA consistent with the Arbitration Agreement. (*Id.* at ¶ 13). On April 3, 2017, SRP received a letter from the AAA requesting that SRP pay its portion of the filing fee ($3,000 total—$1,500 each for Stein and Littlejohn) by April 14, 2017. (*Id.* at ¶ 14). On April 21, 2017, SRP received an e-mail from the AAA asking SRP to "please remit the balance of the filing fee by Wednesday, April 26, 2017." (*Id.* at ¶ 14, Ex. D). On April 25, 2017—before the deadline set by the AAA—SRP remitted two checks via U.S. Mail to the AAA, each check totaling $1,500, to pay its portion of the filling fee. (*Id.* at ¶ 15). Despite this—and even before the April 26, 2017 deadline for SRP to remit payment—Plaintiffs filed their Complaint in federal court on April 25,

4

2017, demonstrating their refusal to proceed to arbitration in accordance with the terms of the Arbitration Agreement.  (Dkt. 1, Complaint).

## Argument

### A.   Legal Standard

In the Eleventh Circuit, "[t]he validity of an arbitration agreement is generally governed by the Federal Arbitration Act ['FAA']."  *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005).  The FAA codifies a strong federal policy in favor of enforcing arbitration agreements, including agreements to arbitrate statutory claims.  *See* 9 U.S.C. § 2; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991) (FAA provisions demonstrate federal policy that favors arbitration; its "purpose was to reverse the longstanding judicial hostility to arbitration agreements"); *see also Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013); *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).  Arbitration allows parties to resolve their claims for "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010); *see Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329–30 (11th Cir. 2014) (The FAA "embodies a liberal federal policy favoring arbitration agreements" and seeks "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation.").  Thus, "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute, it only submits to their resolution in an arbitral, rather than a judicial, forum."  *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

The FAA plainly states that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Indeed, as the Supreme Court reinforced in *Stolt-Nielsen*, the FAA requires a court to "give effect to the contractual rights and expectations of the parties," and agreements to arbitrate must be enforced according to their terms. 559 U.S. at 684 ("[I]t follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."); *see Italian Colors*, 133 S. Ct. at 2309 (Courts must "rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes, and the rules under which the arbitration will be conducted.").

Further, "[t]he [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). "Indeed, compulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes." *Caley*, 428 F.3d at 1367. Courts, therefore, should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone*, 460 U.S. at 22.

"Accordingly, the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quotation omitted); *see Curbelo v. Autonation Benefits Co., Inc.*, 2015 WL 667655, at *2

(S.D. Fla. Feb. 17, 2015) (Bloom, J.) ("[T]here are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived.") (citations omitted).  Where these conditions are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also* 9 U.S.C. § 4 ("upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement"). The party opposing arbitration bears the burden of proving that the claims at issue are not referable to arbitration.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). Because all of the requirements for compelling arbitration are satisfied here, the Court should dismiss this case and compel individual arbitration.

**B.   Plaintiffs Entered Into An Enforceable Written Arbitration Agreement**

"[I]n determining whether a binding agreement [to arbitrate] arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts." *Caley*, 428 F.3d at 1368.  The Arbitration Agreement provides that Florida law shall be applied, Plaintiffs reside in Florida, and Plaintiffs worked for SRP at IHOP restaurants located in Florida. (Dkt. 7 ¶¶ 8-9, 15-17; Ex. 1 ¶¶ 11-12, Exs. B, C).  Accordingly, the Court must look to Florida law to determine whether the Arbitration Agreement is enforceable.  *See, e.g.*, *Pratts v. Ares on Fowler, LLC*, 2015 WL 3539608, at *1 (M.D. Fla. June 3, 2015) (holding that Florida law controls whether valid arbitration agreement exists where case involved purported employment relationship in Florida).

To prove the existence of a valid agreement in Florida, the party seeking to enforce the agreement must establish that there was offer, acceptance, and consideration. *Id.* Here, SRP presented Plaintiffs with the Arbitration Agreement (offer) and Plaintiffs indicated their acceptance and assent to the terms of the Arbitration Agreement by voluntarily executing it on May 5, 2014 (Littlejohn) and on October 12, 2015 (Stein). "In Florida, a party has a duty to learn and know the contents of a proposed contract before he signs and delivers it and is presumed to know and understand its contents, terms and conditions." *Castro v. Newport Bay Corp.*, 2008 WL 4415424, at *4 (M.D. Fla. Sept. 25, 2008) (quotation omitted). Thus, Plaintiffs' execution of the Arbitration Agreement evidences acceptance and their assent to its terms. *See, e.g.*, *Pratts*, 2015 WL 3539608, at *2 (finding, under Florida law, that plaintiff's signature on an agreement required her to arbitrate, particularly because she initialed on page where arbitration provision was located).

The Arbitration is also supported by consideration. The Arbitration Agreement states that "[t]he Company and you understand and agree that arbitration of the disputes and claims covered by this policy shall be the sole and exclusive method of resolving any and all existing and future disputes or claims arising by and between the Company and you." (Ex. 1 ¶¶ 7, 11-12, Exs. B, C). Accordingly, both Plaintiffs and SRP are obligated to arbitrate any claims they may have. Under Florida law, mutual promises and obligations are sufficient consideration to support an arbitration agreement. *See, e.g.*, *Vince v. Specialized Servs., Inc.*, 2011 WL 4599824, at *3 (M.D. Fla. Oct. 3, 2011); *Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So.2d 658, 661 (Fla. 4th DCA 2008) ("[T]here was sufficient consideration to support the [dispute resolution policy] because the agreement created a mutual obligation to arbitrate."); *Kinko's, Inc. v. Payne*, 901 So.2d 354, 356 (Fla. 2d DCA 2005) ("In the present case, there was sufficient consideration

given by both parties, as both Kinko's and Payne are bound by the agreement to submit their disputes to arbitration.").

In addition, the Arbitration Agreement directly states that accepting its terms "is a condition of employment and binding on [Plaintiffs] and SRP." (Ex. 1 ¶ 10). That Plaintiffs continued to work after receiving and signing the Arbitration Agreement further confirms that (a) Plaintiffs assented to the terms of the Arbitration Agreement and (b) there exists sufficient consideration to support the Arbitration Agreement. *See, e.g.*, *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1318 (11th Cir. 2005) (holding that a promise to provide a job was adequate consideration for the parties' arbitration agreement); *Pratts*, 2015 WL 3539608, at *2 (enforcing arbitration agreement under Florida law where acceptance was a condition of employment); *Vince*, 2011 WL 4599824, at *4 (under Florida law, plaintiff's commencement of work after signing an employee handbook acknowledgment form "signifies her acceptance of the arbitration provision contained in both the Employee Handbook and the Acknowledgment form"); *Santos*, 984 So.2d at 661 ("Santos' continued employment with General Dynamics after receipt of the [dispute resolution policy] sufficiently demonstrates his assent to the terms of the arbitration agreement."); *Cintas Corp. No. 2 v. Schwalier*, 901 So.2d 307, 309 (Fla. 1st DCA 2005) ("Here, the consideration for the contract was the promise of continued employment, increased pay and benefits."). Because there was offer, acceptance, and consideration, the Arbitration Agreement is valid and enforceable under Florida law.

**C.     Plaintiffs' Claims Fall Within The Scope Of The Arbitration Agreement**

"In determining the scope of the [Agreement], [this Court is] guided by both the [FAA] and the actual text of the [agreement]." *Lambert*, 544 F.3d at 1197. "The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude

9

categories of claims from their arbitration agreement." *Id.* (internal quotations and citation omitted). A court will compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

Here, the clear and express language of the Arbitration Agreement establishes that all of Plaintiffs' claims in the First Amended Complaint are within the scope of claims covered by the parties' agreement. The First Amended Complaint alleges that Plaintiffs were not paid at one and one-half times the regular rate of pay for hours worked over 40 per work week in violation of the FLSA. (Dkt. 7 ¶¶ 3, 5, 7, 62-78). These claims fall within the scope of the Arbitration Agreement, which expressly states that it applies to "statutory claims under state and federal law including claims arising under . . . the Fair Labor Standards Act." (Ex. 1 ¶¶ 7, 11-12, Exs. A, B, C). Accordingly, the FAA requires this Court to compel arbitration of Plaintiffs' claims.

In addition, the Arbitration Agreement states that it is "a contract to arbitrate work-related disputes" and applies to "any claim or dispute arising out of or relating to [Plaintiffs'] hiring by, employment with or separation from SRP." (*Id.*). As such, the Arbitration Agreement "express[es] a broad, all-inclusive desire to arbitrate disputes," including Plaintiffs' FLSA claims. *See, e .g.*, *Lambert*, 544 F.3d at 1198 (language indicating that arbitration agreement applies to "all workplace disputes" and "arising from or related to employment" "express[es] a broad, all-inclusive desire to arbitrate disputes"); *Saldana v. Interior Concepts LLC*, 2015 WL 12860326, at *2 (S.D. Fla. Apr. 2, 2015) (finding that the use of "arising out of" was broad enough to include the plaintiff's claim, even ones that pre-dated the agreement); *Muniz v. Sharp*

*Deal Auto Repair, Inc.*, 2014 WL 12609466, at *2 (S.D. Fla. July 7, 2014) (by using "such expansive language, the parties agreed to arbitrate any and all claims arising out of plaintiff's employment, like plaintiff's overtime claim."); *Hospicecare of SE Fla., Inc. v. Major*, 968 So.2d 117, 118 (Fla. 4th DCA 2007) ("[C]lauses that use the words 'arising out of or relating to' are typically interpreted broadly."). Because the Arbitration Agreement is a valid and enforceable agreement under Florida law and Plaintiffs' claims fall within the scope of the Arbitration Agreement, the Court should dismiss Plaintiffs' First Amended Complaint and compel individual arbitration.

### D.   Defendants Have Not Waived Their Right To Arbitrate

Plaintiffs attempt to avoid arbitration by claiming that SRP has waived its right to enforce the Arbitration Agreement. Defendants, however, have not acted inconsistent with their right to compel arbitration and have not waived their right to enforce the Arbitration Agreement. Waiver only "occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz v. W. of England Ship Owners Mut. Protection & Indemnification Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995). Prejudice exists when the party opposing arbitration "undergo[es] the types of litigation expenses that arbitration was designed to alleviate." *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014). "Because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." *Citibank, N.A. v. Stok & Assocs., P.A.*, 387 F. App'x 921, 923 (11th Cir. 2010).

Here, Plaintiffs argue that SRP acted inconsistent with its arbitration right because, they claim, SRP "refused to pay the applicable filing fees" when Plaintiffs attempted to pursue individual arbitrations. (Dkt. 7 ¶ 7 n.1). Plaintiffs are wrong on both the facts and the law.

SRP did not "refuse" to pay the applicable filing fee. In fact, SRP remitted the applicable filing fee by mailing two checks to the AAA on April 25, 2017, one day *before* the April 26, 2017 deadline set by the AAA. Yet Plaintiffs did not even wait to see if SRP met the April 26, 2017 deadline set by the AAA to pay the filing fee; instead, Plaintiffs filed their Complaint in federal court on April 25, 2017—the very day SRP mailed the filing fee checks and the day before the AAA deadline—and unilaterally declared that SRP had waived its right to enforce the Arbitration Agreement. (Dkt. 1). Because SRP remitted the applicable filing fee before the April 26, 2017 deadline set by the AAA, it has acted consistently with its right to compel arbitration and has not waived its right to enforce the Arbitration Agreement.

Even if SRP had failed to pay the filing fee (it did not), courts in this District have recognized that a defendant's "failure" to pay filing fees for arbitration "is not persuasive to the Court's waiver analysis" and "falls far below the heavy burden [plaintiff] must meet to establish the defense of waiver." *See, e.g.*, *Smith v. NCL (Bahamas) Ltd.*, 2015 WL 5097121, at *2 (S.D. Fla. Aug. 31, 2015) (rejecting plaintiff's contention that by failing to pay the initial arbitration fee, defendant waived its right to compel arbitration, stating that "while Defendant has failed to pay the arbitration fee, thereby technically delaying arbitration proceedings," it "falls far below the heavy burden" required to show waiver); *Hiotakis v. Celebrity Cruises Inc.*, 2011 WL 2148978, at *9 (S.D. Fla. May 31, 2011) ("Defendant's failure to meet Plaintiff's deadline for payment of filing fees and Plaintiff's subsequent withdrawal from arbitration and unilateral declaration of waiver is not persuasive to the court's waiver analysis.").

Further, SRP has not "substantially invoked the litigation machinery prior to demanding arbitration" and, thus, has not acted inconsistent with the arbitration right. *PNC Bank, N.A. v. Presbyterian Ret. Corp.*, 2015 WL 1931395, at *5 (S.D. Ala. Apr. 28, 2015). To the contrary,

the instant motion is SRP's first responsive pleading and less than seven weeks have passed since Plaintiffs filed their original Complaint. *See Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437 (11th Cir. 1986) (two-and-a-half years of litigation was insufficient to constitute waiver of right to arbitrate); *AMS Staff Leasing, Inc. v. Taylor*, 157 So.2d 682, 686-87 (Fla 4th DCA 2015) ("The first action that AMS took in the lawsuit was filing its motion to compel arbitration. AMS has not actively participated in this lawsuit or otherwise taken any action inconsistent with the right to arbitrate."); *cf. Morewitz*, 62 F.3d at 1366 (finding waiver where party waited more than five years to invoke its right to arbitrate).

In addition, Plaintiffs cannot show that they suffered prejudice. During the short time this case has been pending in federal court, the parties have not incurred the type of litigation expenses that arbitration was designed to alleviate. *In re Checking.*, 754 F.3d at 1294 (prejudice requires a showing that the party opposing arbitration "undergo[es] the types of litigation expenses that arbitration was designed to alleviate"). More specifically, the parties have not engaged in any discovery, no depositions have been taken, and no briefing on the merits of Plaintiffs' Amended Complaint has occurred. Indeed, the only litigation expenses Plaintiffs can claim are those they incurred from their own forum shopping—*i.e.*, Plaintiffs' withdrawal from arbitration and federal court filing.

Because Plaintiffs cannot demonstrate that SRP acted inconsistently with arbitration and that Plaintiffs have been prejudiced, any argument that SRP waived its right to arbitrate Plaintiffs' claims should be rejected.

39349940v.2

### E. The Court Should Dismiss And Compel Individual Arbitration

#### 1. The Court Should Dismiss The Case Rather Than Stay It

Generally, once the Court is satisfied that an issue is arbitrable, it must stay trial until arbitration has been completed in accordance with the terms of the agreement. 9 U.S.C. § 3 ("upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). An exception to this general rule applies where—as here—all of the claims raised in a lawsuit are subject to arbitration; in such a case, the Court may dismiss the lawsuit with prejudice. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) (recognizing "judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration"); *Caley*, 428 F.3d at 1379 (concluding in an FLSA lawsuit that "the district court properly granted defendants' motion to dismiss and to compel arbitration"); *Coffey v. Kellogg Brown & Root*, 2009 WL 2515649, *15 (N.D. Ga. Aug. 13, 2009) ("When a court concludes that all of the claims raised in a plaintiff's complaint must be submitted to arbitration, the court may dismiss with prejudice the plaintiff's complaint.").

As explained in Section C above, all of Plaintiffs' claims are subject to the Arbitration Agreement, so there are no claims on which the Court may grant relief. Accordingly, the Court should dismiss the case and compel arbitration according to the terms of the Arbitration Agreement.

### 2.      In The Alternative, This Action Should Be Stayed

It is undisputed that Plaintiffs agreed to arbitrate the claims they now seek to litigate in this Court, and that they also agreed to arbitrate any claims solely on an individual basis. Plaintiffs cannot meet their burden of demonstrating that the Arbitration Agreement to which they consented is unenforceable. Thus, this case should be dismissed with prejudice and the parties should be ordered to arbitration to resolve Plaintiffs' claims. In the alternative, the parties should be ordered to arbitration and the instant matter should be stayed, pending the outcome of that proceeding. *See* 9 U.S.C. § 3.

### 3.      The Court Should Compel *Individual* Arbitration

The Court should compel *individual* arbitration, rather than leaving the question of whether Plaintiffs can arbitrate their claims as a putative class or collective action to the arbitrator. The Eleventh Circuit and district courts within the Eleventh Circuit have held that where, as here, the class action waiver is clear and explicit, the court should enforce Plaintiff's compliance with it rather than leaving the decision to the arbitrator. *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877 (11th Cir. 2005) (the enforceability of a class action waiver is an "issue [that] may be decided by a federal court"); *Caban v. J.P. Morgan Chase & Co.,* 606 F. Supp. 2d 1361, 1366 (S.D. Fla. 2009) ("[t]he validity of class action waiver is a question for the court, and not for the arbitrator"); *Coffey*, 2009 WL 2515649, at *5 (holding that the court, not the arbitrator, should decide the validity of the class waiver provision.

The Arbitration Agreement's class action waiver is clear and explicit:

> This binding arbitration agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees, or permit such claims or controversies to proceed as a class action, collective action, private attorney general action or any similar representative action.  No arbitrator shall have the authority under this agreement to order any such class or representative action. By signing this agreement, I am agreeing to waive any substantive or procedural rights

15

that I may have to bring an action on a class, collective, private attorney general, representative or other similar basis.

(Ex. 1 at ¶¶ 7, 11-12, Exs. A, B, C).  Accordingly, this Court should follow the Eleventh Circuit and hold that Plaintiffs must arbitrate their claims individually according to the unambiguous terms of the parties' agreement.  *See Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334 (11th Cir. 2014) ("After examining the FLSA's text, legislative history, purposes, and these Supreme Court decisions, we discern no 'contrary congressional command' that precludes the enforcement of plaintiff's arbitration agreement and their collective action waivers."); *Curbelo*, 2015 WL 667655, at *4 (Bloom, J.) (granting motion to compel individual arbitration and rejecting argument against class action waiver in the arbitration agreement as "directly contrary to Eleventh Circuit precedent").

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint and compel arbitration, or, in the alternative, stay these proceedings pending the outcome of arbitration.

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record in this case.

39349940v.2

DATED: June 12, 2017                                Respectfully submitted,

SUNSHINE RESTAURANT PARTNERS, LLC & SUNSHINE RESTAURANT MERGER SUB, LLC


By: /s/ J. Jay Thornton
    Jay Thornton
    Florida Bar No. 323070
    GRAY ROBINSON, P.A.
    333 S.E. 2nd Ave., Suite 3200
    Miami, Florida 33131
    Telephone: (305) 420-3933
    Facsimile: (954) 761-8112
    jay.thornton@gray-robinson.com

    Noah A. Finkel*
    Kara L. Goodwin*
    SEYFARTH SHAW LLP
    233 S. Wacker Drive, Suite 8000
    Chicago, Illinois 60606
    Telephone: (312) 460-5000
    Facsimile: (312) 460-7000
    nfinkel@seyfarth.com
    kgoodwin@seyfarth.com

    Attorneys for Defendants

    *Pro hac vice applications to be filed